IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JOHN L. STRAUCH, et al., | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-13-1543 |
| EXELON CORPORATION, et al., | * | |
| Defendants | * | |

# MEMORANDUM

John J. Strauch and Jason Endlich ("Plaintiffs") brought this suit against Exelon Corporation ("Exelon") and the Constellation Energy Group's Service Plan ("Service Plan") for unpaid wages and benefits due under the Service Plan, in accordance with the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3). (Compl. ¶ 18, ECF No. 1.) Now pending before the Court is Defendants' converted motion for summary judgment.[1] (ECF No. 25.) The matter has been thoroughly briefed (ECF Nos. 13, 17, 22, 24, 25), and no hearing is required, Local Rule No. 105.6 (D. Md. 2011). The motion will be GRANTED.

*I. Background*

Plaintiffs were each employed by Constellation Energy Group, Inc. ("Constellation"), a subsidiary of Exelon, until November 2012, when Constellation sold three power plants, including the facilities and assets Plaintiffs supported, to Raven Power Holdings, LLC ("Raven Power"). (Pls.' Opp'n Mot. Dismiss 2, ECF No. 17; Defs.' Mot. Dismiss 4, ECF No. 14.) In

---

[1] Pursuant to Fed. R. Civ. P. 12(d), the Court ordered (ECF No. 23) that Defendants' motion to dismiss under Rule 12(b)(6) (ECF No. 13) shall be treated as a motion for summary judgment under Rule 56.

1

September 2012, both Plaintiffs were offered positions with Topaz Power Management ("Topaz"), an affiliate of Raven Power, contingent upon the closing of the sale between Constellation and Raven Power. (Defs.' Mot. Dismiss, Ex. 4, 11; *Id.* Ex. 5, 10.) On November 30, 2012, Plaintiffs' employment with Exelon ceased and Plaintiffs immediately began working for Topaz. (*Id.* Ex. 4, 2; *Id.* Ex. 5, 2.)

While employed by Exelon, Plaintiffs were covered by the Constellation Energy Group's Service Plan. (*Id.* Ex. 1, Service Plan, ECF No. 14-2.) Under the Service Plan, employees are entitled to severance benefits in the event of a "change of control," unless the employees meet certain ineligibility criteria, including "[e]mployees who are offered any position with a Successor." (*Id.* Ex. 1, Service Plan 5-6.) The term "Successor" is defined under the Service Plan as "any employer who purchases an Employer subsidiary/affiliate either through a stock or asset purchase." (*Id.* Ex. 1, Service Plan 5.) Plaintiffs were not offered positions with Raven Power, the only successor by their reading of the Service Plan, and accordingly, filed claims with the Plan Administrator seeking severance benefits under the Service Plan. (*Id.* Ex. 4, 6-7, ECF No. 14-5; *id.* Ex. 5, 6-7, ECF No. 14-6.) The Administrator denied both Plaintiffs' claims for benefits, finding that the Plaintiffs were offered and accepted positions with a "Successor." (*Id.* Ex. 4, 6-7; *id.* Ex. 5, 6-7.) Both Plaintiffs timely filed written appeals of the Administrator's decision, where again the Plan Administrator denied the Plaintiffs' claims for benefits under the Service Plan. (*Id.* Ex. 4, 2-5; *id.* Ex. 5, 6-7.) As a result, Plaintiffs filed a complaint with this Court to challenge the Plan Administrator's decisions and to request declaratory, injunctive, and monetary relief. (Compl. ¶ 18.)

## II. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## III. Analysis

The Court will turn first to the proper standard for judicial review of a plan administrator's decision to grant or deny benefits under an employee benefits plan regulated by ERISA. In reviewing the denial of benefits under an ERISA plan, a court must first consider *de novo* whether the relevant plan confers discretionary authority upon the plan fiduciary or

administrator to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *DuPerry v. Life Ins. Co. of North America*, 632 F.3d 860, 869 (4th Cir. 2011). If the plan does not give the administrator or fiduciary discretionary or final authority to determine eligibility or construe uncertain terms, then courts review employees' claims *de novo* without deferring to either party's interpretation. *Firestone*, 489 U.S. at 112; *Booth v. Wal-Mart Stores, Inc. Associates Health and Welfare Plan*, 201 F.3d 335, 340 (4th Cir. 2000). If the plan does confer such discretion, however, the plan administrator's or fiduciary's discretionary decision must be reviewed for an "abuse of discretion." *Booth*, 201 F.3d at 341. Under the abuse of discretion standard, an administrator's or fiduciary's decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion. *Id.* In determining whether the exercise of discretion was reasonable, numerous factors are relevant, including, but not limited to the following:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43. With these principles in hand, the Court now turns to consider the Service Plan at issue and the Plan Administrator's denial of benefits.

An ERISA plan may confer discretion upon its administrator or fiduciary in two ways: (1) with language expressly creating "discretionary authority," or (2) with words creating "discretion by implication." *Woods v. Prudential Life Ins. Co. of America*, 528 F.3d 320, 322 (4th Cir. 2008) (citing *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522-23 (4th Cir. 2000)). Discretion by implication is created where the terms of an ERISA plan indicate a clear intention

4

to delegate final authority to determine eligibility or construe the terms of the plan to the administrator or fiduciary. *Feder*, 228 F.3d at 523; *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir. 1989) (finding "it need only appear on the face of the plan documents that the fiduciary has been 'given [the] *power* to construe disputed or doubtful terms'—or to resolve disputes over benefits eligibility—in which case 'the trustee's interpretation will not be disturbed if reasonable'" (quoting *Firestone*, 489 U.S. at 111) (alteration in original)). In the present case, the Service Plan states that the Plan Administrator has the "exclusive right to make determinations with respect to the administration and interpretation of the [Service] Plan in accordance with ERISA … including, but not limited to, the power to (i) interpret the provisions of the [Service] Plan … and (iii) grant or deny benefits under the plan." (Defs.' Mot. Dismiss, Ex. 1, Service Plan 16.) The Court is satisfied that the language of the Service Plan granting the Plan Administrator the *exclusive right* to grant or deny benefits and interpret the terms of the plan establishes discretion by implication. The Court, therefore, will consider whether the Plan Administrator abused her discretion when she denied the Plaintiffs' claims for severance benefits.

First, however, before deciding whether the Plan Administrator's denial of benefits was an abuse of her discretion, the Court will briefly address two arguments forwarded by the Plaintiffs. Plaintiffs' opposition does not dispute that the terms of the Service Plan grant discretionary authority to the Plan Administrator; rather, Plaintiffs urge the Court to deny summary judgment on either the "plan document rule" or the rule of *contra proferentum*. (Pls.' Opp'n Summ. J. 9-13, ECF No. 24.) Yet, both are inapposite to the present case. Plaintiffs read the plan document rule as stating that the Plan Administrator had "no discretion" to interpret the term "Successor" because it is clearly defined under the Service Plan. (*Id.* at 10-11.) The plan

document rule, however, forbids plan administrators or fiduciaries from considering *external documents*; administrators and fiduciaries must "look solely at 'the directives of the *plan documents*' in determining how to disburse benefits." *Boyd v. Metropolitan Life Ins. Co.*, 636 F.3d 138, 140 (4th Cir. 2011) (quoting *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285, 300 (2009)) (emphasis added).  The plan document rule does not remove a plan administrator's discretionary authority to construe terms *within the plan documents themselves*.  Similarly, the rule of *contra proferentum*, an insurance doctrine requiring ambiguities to be construed in favor of the insured, is also inapposite here.  *Contra proferentum* only applies in cases where the ERISA plan at issue does not grant the plan administrator discretionary authority, and accordingly, courts review the administrator *de novo*.  *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260-61 (4th Cir. 2009) (finding that the Supreme Court, in *Metropolitan Life Ins. Co. v. Glenn*, foreclosed courts' ability to apply *contra proferentum* in cases where the ERISA plan at issue granted the plan administrator or fiduciary discretionary authority (citing 554 U.S. 105, 116-17 (2008))); *see also Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 815, 819 (4th Cir. 2013) (applying the rule of *contra proferentum* where the parties stipulated to the *de novo* standard of review).  As discussed *supra*, the Service Plan at issue in the present case does grant the Plan Administrator discretionary authority to determine eligibility and construe the terms of the plan; accordingly, *contra proferentum* is inapplicable.

The Court will now consider whether the Plan Administrator abused her discretion when she denied Plaintiffs' claims for benefits.  A review of the record indicates that the Plan Administrator's discretionary decision was in fact reasonable considering the relevant factors outlined in the Fourth Circuit's decision in *Booth*.  *See* 201 F.3d at 342-43.  The Plan Administrator's interpretation is consistent with the language used in the definition of a

"Successor" and with other provisions in the Service Plan. *See id.* Under the Service Plan, employees are ineligible for severance benefits if they are "offered any position with a Successor." (Defs.' Mot. Dismiss, Ex. 1, Service Plan 8-9.) The Plan Administrator interpreted the term "Successor" to include the direct purchaser, Raven Power, and its affiliates, including Topaz. (*Id.*, Ex. 4, 6-7; *id.* Ex. 5, 6-7.) A "Successor" is defined under the Service Plan as "any employer who purchases an Employer subsidiary/affiliate either through stock or asset purchase." (*Id.* Ex. 1, Service Plan 8.) The term "Employer" is defined elsewhere in the Service Plan as "Constellation Energy Group *and any subsidiary/affiliate of* Constellation Energy Group ..." (*Id.* Ex. 1, Service Plan 6 (emphasis added).) Accordingly, the term "Successor" may be interpreted by reading the word "employer," within the definition of a "Successor," consistently with the definition of "Employer" elsewhere in the Service Plan. A "Successor" would, therefore, include the direct purchasing employer, Raven Power, and any subsidiary/affiliate of that employer, which, in this case, is Topaz. Additionally, the Plan Administrator's interpretation is consistent with provisions found in ERISA itself. *See Booth*, 201 F.3d at 342-43. For example, ERISA provides that employees employed by corporations that are members of a "controlled group of corporations" or that are "under common control" shall be treated as employed by a "single employer." 29 U.S.C. §§ 1060(c), (d). Further, even if the Court were to find the Plan Administrator's interpretation of the term "Successor" was not the *most* reasonable one, that alone would be insufficient to disturb the Plan Administrator's discretionary decision. *See Booth*, 201 F.3d at 341 ("a trustee's discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion") (citation omitted); *de Nobel*, 885 F.2d at 1190 (upholding a plan fiduciary's discretionary

interpretation of the plan at issue even though the Court found the plaintiff's interpretation to be more consistent with the "plain language" of the plan).

Plaintiffs point to a prior application of the Service Plan to argue that the Plan Administrator's decision was inconsistent with earlier interpretations of the Service Plan.[2] *See Booth*, 201 F.3d at 342-43. This prior interpretation involved approximately 43 Constellation employees who were terminated when the lease for the power plant they supported ended and the employees were hired by the new lessee of the facility, Olympus Power. (Pls.' Opp'n Summ. J., Strauch Aff. ¶ 12-16, ECF No. 24-1.) The Plan Administrator granted severance benefits to those Constellation employees because Olympus Power *had not purchased* any assets from Constellation, and therefore, did not meet that element of the definition of a "Successor." (*Id.*) Here, conversely, there is no dispute as to whether there was a "stock or asset *purchase*" between Constellation and Raven Power; the dispute involves the Plan Administrator's finding that Raven Power and Topaz are a single "Successor." Accordingly, the evidence regarding the Olympus Power interpretation is of no moment to the present case and does not demonstrate the Plan Administrator's decision as to these Plaintiffs was inconsistent with any prior interpretations of the Service Plan.

Plaintiffs also contend that the Plan Administrator's interpretation of the Service Plan was unreasonable because she was operating under a conflict of interest as an employee of Exelon. (Pls.' Opp. Summ. J. 15.) The Court agrees that such a conflict exists where, as here, the plan administrator is an employee of the defendant corporation. *See DuPerry*, 632 F.3d at

---

[2] Defendants' motion argues that Plaintiffs are precluded from introducing this prior interpretation of the Service Plan because they did not raise it before the Plan Administrator. (Defs.' Converted Mot. Summ. J. 8, ECF No. 25.) The Fourth Circuit, however, has held that district courts reviewing a plan administrator's decision for an abuse of discretion should focus on whether evidence was known to the administrator when it rendered its decision, not whether it was part of the administrative record. *Helton v. AT&T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013). Defendants' motion concedes that the Plan Administrator had knowledge of her own prior interpretation of the Service Plan. (Defs.' Converted Mot. Summ. J. 7 n.2.)

869. The presence of such a conflict, however, does not alter the abuse of discretion standard of review; rather, it is but one factor in determining the reasonableness of the administrator's decision. *Id.* 869-70 (citing *Glenn*, 554 U.S. at 116). Here, the existence of such a conflict, alone, will not displace the countervailing reasonableness of the Plan Administrator's denial of benefits. Plaintiffs have raised no evidence demonstrating that the Plan Administrator was incapable of fairly evaluating claims for benefits; in fact, the evidence relating to Olympus Power discussed *supra* supports the opposite conclusion.

Finally, Plaintiffs argue that they are entitled to severance benefits because neither Raven Power nor Topaz was required under the Sale Agreement (Defs.' Mot. Dismiss, Ex. 1, Sale Agreement, ECF No. 14-3) to hire them and because the jobs Plaintiffs accepted with Topaz are unequal to their former jobs with Constellation. (Pls.' Opp'n Mot. Dismiss 10-11, ECF No. 17.) These arguments contradict the language of the Service Plan. An employee becomes ineligible for benefits under the Service Plan if he is "*offered any* position with a Successor." (Defs.' Mot. Dismiss, Ex. 1, Service Plan 8-9 (emphasis added).) The Service Plan does not contain a mandate that employment "offers" be part of the stock or asset transfer agreement between Constellation and the Successor. Rather, employees are ineligible under the Service Plan if they receive an employment offer. Further, the Service Plan's use of the word "any" denotes that an employee need not be offered an equivalent position with a Successor to be ineligible for severance benefits. Here, both Plaintiffs received and accepted offers of employment from Topaz.

Having considered the *Booth* factors as they apply to the instant case, the Court finds that the Plan Administrator's decision was not an abuse of her discretion, and therefore, shall not be disturbed.

*IV. Conclusion*

The Defendants have established their entitlement to summary judgment on all counts of the complaint. A separate order will issue.

DATED this <u>18th</u> day of November, 2013.

BY THE COURT:

/s/
James K. Bredar
United States District Judge